85 P.3d 966 (2004)
In re the MARRIAGE OF Johnora LEMKE, Appellant, and
David H. Lemke, Respondent.
No. 29975-5-II.
Court of Appeals of Washington, Division 2.
March 9, 2004.
*967 Gina Marie Auter, Miller Quinlan & Auter, Fircrest, WA, for Respondent.
Charles F. Schmit, Attorney at Law, Tacoma, WA, for Appellant.
MORGAN, P.J.
Can a child's present environment be characterized as "detrimental" to the child's physical, mental, or emotional health simply because the child's primary residential parent asks a fit grandparent to provide child care while the parent is working out of town? Answering no, we reverse.
In January 1998, the marriage of David and Johnora Lemke was dissolved. Johnora was given primary residential placement of their three minor daughters.[1] Johnora and the girls have lived in Tacoma ever since. Johnora's mother, Edith Drylie, has lived with them since shortly after the dissolution.
At the time of the dissolution, Johnora was working in the evenings as a waitress. In June 1998, she got a job as a "flagger" with Fiber Cable. She worked locally from 7 a.m. to 4:30 p.m. on weekdays. While she was working, Drylie cared for the girls.
In August 2000, Johnora began working as a supervisor for Schenck Communications. Although locally headquartered, Schenck sometimes contracts to perform work in other states.
Johnora worked locally at first, while Drylie cared for the girls. In November 2000, Schenck assigned Johnora to a job in Portland, Oregon. Due to the distance, she stayed in Portland on weeknights but returned home each weekend. While she was gone, Drylie cared for the girls.
In January 2001, Schenck assigned Johnora to a job in Centralia, Washington. She commuted daily, leaving at 4 a.m. and returning between 7 and 8 p.m. While she was gone, Drylie cared for the girls.
In June 2001, Schenck sent Johnora to Texas for a month. While she was gone, Drylie cared for the girls.
In July 2001, Johnora returned to Tacoma. She worked locally for the next three months. While she was working, Drylie cared for the girls.
In October 2001, Schenck assigned Johnora to a job in Alaska. She came home "[e]very three to four weeks ... for five day periods to be with [her] children."[2] While she was gone, Drylie cared for the girls.
In March 2002, Schenck sent Johnora to Hermiston, Oregon. Hermiston being a five-hour drive from Tacoma, Johnora stayed there during the week but came home on weekends. While she was gone, Drylie cared for the girls.
In August 2002, Schenck assigned Johnora to a job in Eugene, Oregon. Because of the distance, Johnora stayed there during the week but came home on weekends. While she was gone, Drylie cared for the girls.
On September 27, 2002, David petitioned to change the girls' primary residential placement. He alleged that Johnora's home was presently detrimental to the children because "[s]he is not here to fulfill her role as the primary residential parent, and I do not see how she can argue that I should not take on this role that I am very willing [and] able to do."[3] At the same time, however, he acknowledged that Drylie was a fit and proper person to care for the children. In a declaration supporting his petition, he said that Drylie "is a wonderful woman, and I have no *968 problem with her providing any child care necessary for the children."[4]
On November 5, 2002, a court commissioner heard argument on whether David's affidavits and declarations stated facts sufficient to justify a hearing. David orally confirmed that Drylie was a "wonderful grandmother"[5] who could, if the children were living with him, continue "to provide any before or after-school child care."[6] The commissioner ruled that David had shown facts sufficient to warrant a hearing.
Later the same month, Johnora moved to revise the commissioner's ruling. She claimed that the commissioner had erred because David had not presented facts sufficient to support a finding that the girls' present home was "detrimental to their physical, mental and emotional health."[7] In mid-December, a superior court judge denied the motion to revise.
On December 19, 2002, Johnora moved for reconsideration and dismissal. On December 26, 2002, Schenck committed itself to assign Johnora to jobs in this state only. Since then, as far as the record shows, Johnora has worked in Mount Vernon, about 100 miles from Tacoma. She commutes each day, arriving home about 6:30 P.M. While she is gone, Drylie cares for the girls.
On January 28, 2003, the superior court denied Johnora's motions for reconsideration and dismissal. Johnora sought discretionary review of the order granting a hearing, and on May 5, 2003, a commissioner of this court allowed discretionary review.
RCW 26.09.270 provides that when a party moves to modify a custody decree or parenting plan, he or she must submit with the motion "an affidavit setting forth facts supporting the ... modification."[8] It also provides that the court shall deny the motion without hearing unless the affidavit establishes "adequate cause" to set a hearing. At the very minimum, "adequate cause" means evidence sufficient to support a finding on each fact that the movant must prove in order to modify; otherwise, a movant could harass a non-movant by obtaining a useless hearing.
In this case, David had to prove, among other things, that "[t]he child's present environment is detrimental to the child's physical, mental, or emotional health."[9] *969 Here then, David's affidavits had to show, at a minimum, facts sufficient to support a finding that the children's "present environment"that is, Johnora's homewas "detrimental" to the children's "physical, mental, or emotional health."
David's affidavits show only that Johnora is sometimes gone because of her job; that Johnora has Drylie, her own mother, watch the children while she is gone; and that Drylie "is a wonderful woman" who can provide "any child care necessary for the children."[10] The affidavits do not show, or even suggest, that Johnora's home is detrimental to the children. Accordingly, we hold that David failed to comply with RCW 26.09.270, and that the trial court erred by granting a hearing.
We do not overlook In re Parentage of Jannot,[11] which recently changed the standard by which an appellate court reviews a trial court decision based on RCW 26.09.270.[12]Jannot involved a trial court's denial of a hearing; thus, it holds or implies that a trial court has discretion to deny a hearing even if the movant's affidavits show evidence that is sufficient when taken in the light most favorable to the movant. Jannot did not involve a trial court's grant of a hearing; thus, it does not hold or imply that a trial court has discretion to grant a hearing even if the movant's affidavits do not show evidence that is sufficient when taken in the light most favorable to the movant. The question here is whether a trial court has discretion to grant a hearing when the movant's affidavits do not show evidence sufficient to support a finding that the child's present home is detrimental, and that question is not affected by Jannot.
The order granting a hearing is reversed.
We concur: BRIDGEWATER and ARMSTRONG, JJ.
NOTES
[1] The daughters were born September 7, 1990, May 14, 1992, and January 6, 1994, respectively.
[2] Clerk's Papers (CP) at 33.
[3] CP at 12.
[4] CP at 13.
[5] Report of Proceedings (RP) (November 5, 2002) at 2.
[6] RP (November 5, 2002) at 6.
[7] See CP at 95; RCW 26.09.260(2)(c).
[8] RCW 26.09.270 provides in pertinent part:

A party seeking a ... modification of a custody decree or parenting plan shall submit together with his motion, an affidavit setting forth facts supporting the ... modification and shall give notice, together with a copy of his affidavit, to other parties to the proceedings, who may file opposing affidavits. The court shall deny the motion unless it finds that adequate cause for hearing the motion is established by the affidavits, in which case it shall set a date for hearing on an order to show cause why the requested order or modification should not be granted.
[9] RCW 26.09.260(2)(c). Subject to exceptions not pertinent here, RCW 26.09.260(1) provides:

[T]he court shall not modify a prior custody decree or a parenting plan unless it finds, upon the basis of facts that have arisen since the prior decree or plan or that were unknown to the court at the time of the prior decree or plan, that a substantial change has occurred in the circumstances of the child or the nonmoving party and that the modification is in the best interest of the child and is necessary to serve the best interests of the child.
RCW 26.09.260(2) provides:
(2) In applying these standards, the court shall retain the residential schedule established by the decree or parenting plan unless:
(a) The parents agree to the modification;
(b) The child has been integrated into the family of the petitioner with the consent of the other parent in substantial deviation from the parenting plan;
(c) The child's present environment is detrimental to the child's physical, mental, or emotional health and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child; or
(d) The court has found the nonmoving parent in contempt of court at least twice within three years because the parent failed to comply with the residential time provisions in the court-ordered parenting plan, or the parent has been convicted of custodial interference in the first or second degree under RCW 9A.40.060 or 9A.40.070.
[10] CP at 13. See also RP (November 5, 2002) at 2, where David characterizes Drylie as a "wonderful grandmother," and RP (November 5, 2002) at 6, where David says that if the children were living with him, he would be happy for Drylie to continue "to provide any before or after-school child care."
[11] 149 Wash.2d 123, 65 P.3d 664 (2003).
[12] Jannot changed the standard from de novo (i.e., without deference to the trial court) to abuse of discretion (i.e., with deference to the trial court), whether or not the trial court decision is based exclusively on documents. Jannot, 149 Wash.2d at 128, 65 P.3d 664. Earlier cases had reviewed de novo (i.e., without deference to the trial court), on the ground that an appellate court can interpret documents as well as a trial court. In re Marriage of Mangiola, 46 Wash.App. 574, 577, 732 P.2d 163 (1987); In re Marriage of Roorda, 25 Wash.App. 849, 853, 611 P.2d 794 (1980). Rather than applying the new standard, Jannot remanded for the trial court to explain why it had opted to deny a hearing.