IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re the Marriage of: | ) | No. 31633-5-III |
| | ) | |
| JAMES RUSSELL MACKENZIE, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| REBECCA E. MACKENZIE, nka | ) | |
| RODRIGUEZ, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, C.J. — Rebecca Rodriguez appeals eight decisions by superior court

commissioners and judges rejecting her direct and indirect efforts to obtain relief from a

parenting plan to which she agreed in December 2011. She identifies no debatable issues

on which reasonable minds could differ. We affirm the trial court in all respects and

award her ex-husband, James Mackenzie, his reasonable attorney fees and costs on

appeal.[1]

---

[1] In her reply brief, Ms. Rodriguez asks this court to consider additional evidence.
A party may include in a brief only a motion which, if granted, would preclude hearing the
case on the merits. RAP 17.4(d). Moreover, Ms. Rodriguez ignores the criteria as to
when additional evidence will be considered on review. RAP 9.11. Her motion is denied.

No. 31633-5-III
*In re Marriage of Mackenzie*

FACTS AND PROCEDURAL BACKGROUND

James Mackenzie and Rebecca Rodriguez were divorced in 2005. Mr. Mackenzie was named primary custodian of their three children, who were ages two, five, and six at the time of entry of the decree.

After the divorce and before 2011, Ms. Rodriguez unsuccessfully attempted on several occasions to challenge Mr. Mackenzie's rights and actions under the parenting plan. In 2005, she filed a claim with Child Protective Services (CPS) alleging sexual abuse by Mr. Mackenzie; after an investigation, CPS ruled the case unfounded and closed it. In 2006 she petitioned to modify the parenting plan, without success. In 2008, she filed six motions seeking to hold Mr. Mackenzie in contempt and was sanctioned $500 on the basis that the motions were frivolous.

In February 2011, it was Mr. Mackenzie who moved to modify the then-existing parenting plan under which he and Ms. Rodriguez had equal time with their children. He did so after the counselor at the children's school notified CPS of a credible report by the children that Ms. Rodriguez's new husband, Juan David (J.D.) Rodriguez, had threatened the children and made threats against Mr. Mackenzie. The counselor left a message for Mr. Mackenzie suggesting that he seek emergency temporary custody of the children and a restraining order against Mr. Rodriguez. Mr. Mackenzie did, and the superior court entered temporary orders that vastly reduced the amount of time the children spent with Ms. Rodriguez and ruled out any contact between the children and Mr. Rodriguez.

2

In December 2011, having lived under the modified parenting terms for 10 months, Mr. Mackenzie and Ms. Rodriguez submitted an agreed order on modification and final parenting plan, which was entered by the court. Under the order, Ms. Rodriguez agreed to be limited to three afterschool visits a week with the children and a fourth afterschool visit if she gave notice. The plan ruled out overnight visits between her and the children and continued the prohibition on contact between the children and Mr. Rodriguez. The parties agreed "[i]t is not in the best interests of the children at this time to have any contact with the mother's husband who resides with the mother." Clerk's Papers (CP) at 559.

Mr. Mackenzie does not dispute that in entering into the agreed parenting plan, the parties contemplated ongoing counseling for the children and the possibility that, through family therapy, the children might be reconciled with Mr. Rodriguez in the future. An agreed order on family therapy entered in April 2011 had provided that if the children's counselor, Carol Thomas, believed it was in the best interests of the children, Mr. Rodriguez could be present with them during family therapy. Terms of the agreed parenting plan that appear to reflect the possibility of future reconciliation include its provision that "[t]he parties agree the court could find a pattern of emotional abuse of a child, and have entered into this agreed order in pursuit of long-run resolution," that Mr. Rodriguez was to have no contact with the children whatsoever "pending further order of the court or agreement of the parties," and that "[m]other shall continue to take children

3

to counseling with Carol Thomas as recommended by Ms. Thomas and follow her recommendations." CP at 551, 553. Mr. Mackenzie's lawyer conceded that "[w]hat we allowed in that plan is if Carol Thomas, who has been seeing the kids for six years, thinks it's appropriate and in the best interest of the children to be able to have counseling and move on with J.D., we'll get into that." CP at 535.

The series of motions that led to this appeal were filed by Ms. Rodriguez beginning in December 2012, after she learned from Ms. Thomas that one of the children reported that several months earlier, on September 19, Mr. Mackenzie had pulled out and displayed a 12-gauge shotgun in the course of trying to get Tammy Willard, his soon-to-be-former girl friend, out of his home. He had done so in front of his and Ms. Rodriguez's three children and Ms. Willard's 13-year-old daughter. Ms. Willard had obtained an ex parte protection order against Mr. Mackenzie the next day. She had also filed a complaint with Spokane city police, which led to a criminal complaint being filed in Spokane Municipal Court on October 9, charging Mr. Mackenzie with the unlawful display of a weapon and domestic violence assault for "pushing and shoving TAMMY L. WILLARD." CP at 618.

By the time Ms. Rodriguez learned of the incident with Ms. Willard, Mr. Mackenzie had responded to the ex parte order with a declaration in which he denied Ms. Willard's allegations about what had happened, stated that Ms. Willard had refused to leave his home after he had told her to leave "some 20 times," and that he eventually

pulled out an unloaded 12-gauge shotgun because "I wanted her to take me seriously." CP at 596-97. Mr. Mackenzie stated he never pointed the gun at Ms. Willard but admitted that he made a mistake in pulling out the unloaded gun at all. Following a hearing, a two-year civil domestic violence protection order had issued against Mr. Mackenzie and he was ordered to surrender all firearms.

Also by the time Ms. Rodriguez learned of the incident, the city prosecutor had dismissed the charge that Mr. Mackenzie had unlawfully displayed a weapon. The charge for pushing and shoving Ms. Willard remained pending, subject to a stipulated order of continuance and, according to an uncontested representation by Mr. Mackenzie's lawyer, was expected to be dismissed in the future.

On December 20, 2012, Ms. Rodriguez relied upon Mr. Mackenzie's altercation with Ms. Willard to move the superior court for an ex parte order of protection, alleging that her three children were victims of domestic violence committed by Mr. Mackenzie. She also filed a summons and petition for modification of the more-than-year-old parenting plan. The substantial change of circumstances she offered as a basis for modification was the domestic violence incident involving Ms. Willard. Ms. Rodriguez also alleged that Mr. Mackenzie "threatened the children to keep his criminal charges and restraints secret from [Ms. Rodriguez], which the children did until 12/12/12, at which time Carol Thomas was informed, and she then told [Ms. Rodriguez]." CP at 573. Ms. Rodriguez's proposed modification was to have her parents be the primary caregivers for

5

the children in lieu of Mr. Mackenzie, with Ms. Rodriguez maintaining her usual visitation with her children three afternoons a week.

A commissioner of the superior court heard Ms. Rodriguez's motion for an emergency restraining order on December 20 and denied it. The commissioner's order recognized that the basis for Ms. Rodriguez's motion was a "gun pulled in front of children on 9/19/12, undisclosed until immediate past." CP at 658. It nonetheless found that "[g]ood cause exists to deny the motion." *Id.* For findings, it incorporated its oral ruling.

Ms. Rodriguez immediately requested emergency revision of the commissioner's decision by the presiding judge of the superior court. The judge denied emergency revision, finding, "Good cause exists to deny motion. No record. Transcription of hearing is required." CP at 105.

The next of Ms. Rodriguez's December filings to come before the court was her petition for modification of the existing parenting plan. To secure a full hearing on a proposed modification of a parenting plan, a party must submit "an affidavit setting forth facts supporting the requested . . . modification" and the court must deny the motion without a full hearing unless the affidavit establishes "adequate cause." RCW 26.09.270. "Adequate cause" means, at the very minimum, "evidence sufficient to support a finding on each fact that the movant must prove in order to modify." *In re Marriage of Lemke,* 120 Wn. App. 536, 540, 85 P.3d 966 (2004). The primary purpose for the requirement is

6

to prevent movants from harassing nonmovants by obtaining a useless hearing. *In re Marriage of Adler*, 131 Wn. App. 717, 724, 129 P.3d 293 (2006) (citing *Lemke*, 120 Wn. App. at 540).

On February 15, 2013, a court commissioner conducted a hearing to determine whether Ms. Rodriguez had established adequate cause entitling her to a full hearing on her request for modification. The commissioner did not find adequate cause justifying a hearing on a major modification of the parenting plan, but did find adequate cause to hear Ms. Rodriguez on a minor modification: a change that would entitle her to have the three children overnight at either her home or her parents' home, provided that Mr. Rodriguez was not there. The full hearing on that minor modification had not been conducted on the date this appeal was heard. The commissioner also entered a domestic violence protection order that prohibited Mr. Mackenzie from any acts of domestic violence toward the children, prohibited him from consuming alcohol while the children were present, and required that he participate in four months of counseling with the children.

Dissatisfied with the commissioner's decisions, Ms. Rodriguez again moved for revision. She asked that the superior court revise the commissioner's finding of no adequate cause for a major modification and the domestic violence order, which she contended was not harsh enough.

The superior court heard the motion for revision on March 14, and denied it. After noting that the charge that Mr. Mackenzie had unlawfully displayed a weapon had been

7

dropped and that he had not been arrested on the domestic violence assault charge (a gross misdemeanor) but was only issued a summons, the court explained in its oral ruling:

> To come here and say we'd like a major modification, but, sorry, the kids can't come to my house. They have to go to grandma's or her parents' is not the way this works. The Court isn't going to say I'm going to give them to a third-party because my house is so bad and his house is so bad.
>     The Court has to go back through and figure out what's in the best interest of the children. To give them to a third-party grandparent is not the answer. . . .
>     . . . .
>     As Commissioner Moe went back through, these kids are doing good. Carol Thomas is dealing with some of the issues. Apparently from looking at the records, Mr. Mackenzie is following up on what Commissioner Moe would like to see happened.
>     At this time, the Court doesn't see any change in revising this. It does seem like this just keeps coming up. These kids need some peace between these parents. To just keep coming back for another major modification, appointing a Guardian ad Litem, I do not see that in the best interest of the kids.
>     . . . [T]he [domestic violence] incidents, even though it happened and she didn't know about it, it was way back in September.
>     I'm not downplaying it. If the father is dealing with that issue and moving forward and Ms. Thomas knows about it and the kids are still doing at least great in school, at this point, the Court's going to have to deny the revision and leave it as is. I think Commissioner Moe got it right at this time.

CP at 546-48.

On March 22, Ms. Rodriguez moved the superior court for reconsideration of its refusal to revise the commissioner's orders. At the same time, she moved for an order to show cause why Mr. Mackenzie should not be held in contempt for disparaging the

Rodriguezes and for "subvert[ing] reconciliation counseling ordered on 12/13/11." CP at 350.[2] About two weeks later, Ms. Rodriguez filed a motion under CR 60(b) to vacate the December 2011 parenting plan for fraud, alleging that Mr. Mackenzie knew he was subverting the reconciliation counseling before entry of the agreed parenting plan and continued to subvert the reconciliation counseling thereafter. The basis for both requests for relief was Ms. Rodriguez's reported discovery, upon reviewing therapy notes of Ms. Thomas that were released to the parties in February 2013, that Mr. Mackenzie had been disparaging the Rodriguezes and reminding the children of problems they had experienced with Mr. Rodriguez in the past.

The trial court denied the motion for reconsideration on April 10. It transmitted the order denying the motion under a cover letter stating that nothing new was presented to alter the court's previous ruling. In addition, the court—which had evidently seen Ms. Rodriguez's new motion papers in the court file—observed that there was an upcoming show cause hearing "with almost identical issues being raised that had previously been heard twice by the Court." CP at 378. Mr. Mackenzie's alleged subversion of the

---

[2] A third basis for seeking a contempt order was that Mr. Mackenzie had failed to sign the protection order. Ms. Rodriguez does not argue that issue on appeal and accordingly it will not be discussed in this opinion.

No. 31633-5-III
*In re Marriage of Mackenzie*

reconciliation process had been relied upon by Ms. Rodriguez's lawyer during the

revision hearing.[3]

After receiving the trial court's order denying reconsideration, Ms. Rodriguez filed

a *second* motion for reconsideration on April 17. Her motion expressed concern about

the court's transmittal letter, which she suggested prejudged her new motion, set for

argument on April 26. She argued:

> A Motion to Vacate for fraud is not "identical" to a Petition to
> Modify a Parenting Plan for abuse and domestic violence. This is a vital
> error being made by the court as to procedural posture, and clarification of
> the court is requested (assuming the court does not wish to go further on
> reconsideration). Any sense of prejudging the Motion to Vacate is
> requested to be retracted by the court.

CP at 399-400.

---

[3] At the revision hearing, Ms. Rodriguez's lawyer referred to "the two years of aggressive subversion of the reconciliation counseling," and argued that "we've had the conscious and deliberate subversion of agreed court order." CP at 528-29. He argued, "We have deliberate subversion of the reconciliation. We have disparagement of the other side." CP at 531-32. The alleged subversion revealed by Ms. Thomas's notes was the basis for his argument that the request to modify was based on new information:
> We had no knowledge that Mr. Mackenzie was subverting reconciliation
> prior to getting these notes. . . .
>     . . . .
> Our focus here is on new facts. It's on facts that are new, include
> facts not known to the Court or the parties, and we did not know he was
> subverting reconciliation counseling from 3/11 forward.
CP at 544.

On May 17, the superior court responded to the second motion for reconsideration, pointing out that "[t]he Court <u>did not misunderstand</u> Counsel's request, the Court <u>denied</u> it." CP at 504.

In the meantime, on April 26, a court commissioner had heard Ms. Rodriguez's contempt motion and her motion to vacate the December 2011 parenting plan and denied both. The commissioner observed that Ms. Rodriguez appeared to have regrets about agreeing to the parenting plan, but told her lawyer, "I don't know what we have to do to send a message that you're not gonna win this case. Mom is gonna have to live with what she's done. And until you can show that there's some detriment in dad's home, you're basically bringing what I'm gonna call frivolous motions and sanctions are appropriate." CP at 520. It imposed attorney fees in the amount of $1,125 against Ms. Rodriguez and her lawyer.

Ms. Rodriguez appeals.

## ANALYSIS

Ms. Rodriguez has assigned error to eight decisions of commissioners and judges of the superior court. We address the challenged decisions in chronological order, combining related decisions as appropriate.

### I. December 20, 2012 Order Denying Ex Parte Restraining Order

Ms. Rodriguez assigns error to Commissioner Mark Kim's denial of her motion for an ex parte restraining order as well as Judge Gregory Sypolt's denial of a request for

11

an emergency revision of that denial. In an appeal from an order denying revision of a court commissioner's ruling, we ordinarily review the superior court's decision, not the commissioner's ruling. *In re Marriage of Williams*, 156 Wn. App. 22, 27, 232 P.3d 573 (2010). Here, however, the commissioner denied relief on substantive grounds while the judge's reasons were procedural, so we will address the decisions separately.

Ms. Rodriguez argues that Commissioner Kim abused his discretion in denying her motion for a domestic violence protection order. Whether to grant, modify, or terminate a protection order is a matter of judicial discretion. *In re Marriage of Freeman*, 169 Wn.2d 664, 671, 239 P.3d 557 (2010). An abuse of discretion occurs if the court's decision is manifestly unreasonable or based on untenable grounds or reasons. *In re Marriage of Littlefield*, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997).

Ms. Rodriguez contends that Commissioner Kim denied her request for an emergency protection order based on her three-month delay in seeking the order, which she contends was an untenable reason given that she had only recently learned about the Willard incident. This is a mischaracterization of the commissioner's ruling. He was mindful that Ms. Rodriguez had only recently learned of the incident, as reflected in his written order. He did not rely on the delayed discovery as a basis for denying relief.

Commissioner Kim identified two reasons for refusing to enter the requested order. The first was that an act occurring in September does not ordinarily give rise to imminent harm three months later. To succeed in obtaining a protection order, there must

12

be a present reasonable likelihood of imminent harm. *Freeman*, 169 Wn.2d at 674.

The commissioner's second reason for denying the motion was that he did not believe that Mr. Mackenzie's actions toward Ms. Willard in front of the children met the burden required to obtain an ex parte order.

Ms. Rodriguez fails to demonstrate that either reason was untenable or that the decision was manifestly unreasonable.

*II. December 20, 2012 Order Denying Revision*

On the afternoon that her application for an emergency protection order was denied by Commissioner Kim, Ms. Rodriguez proceeded to the presiding judge, Gregory Sypolt, seeking emergency revision. She did so lacking a transcript of the commissioner's oral ruling, which is required by Spokane County LAR 0.7(b) to obtain a hearing on a revision motion. LAR 0.7(b) provides that a failure to comply with the rule's requirements "may result in denial of the motion." Judge Sypolt denied Ms. Rodriguez's emergency revision in a written order stating, "Good cause exists to deny motion. No record. Transcription of hearing is required." CP at 105.

Ms. Rodriguez argues that the judge failed to adhere to LAR 0.7(e), which states,

If a party can demonstrate exigent circumstances, an emergency motion may be presented to the Presiding Judge, upon reasonable notice to the opposing party, without the necessity of meeting the requirements set forth in the above sections of this rule. The Presiding Judge may determine that exigent circumstances do not justify an emergency hearing. In that event, the moving party shall follow the procedures set forth above.

13

Whether to observe local rules is within the discretion of the court, so Ms. Rodriguez bears the burden on appeal of demonstrating not only that Judge Sypolt failed to observe the local rule, but also that the failure to observe the rule was an abuse of discretion. *State v. Ralph Williams' N. W. Chrysler Plymouth, Inc.*, 87 Wn.2d 327, 334 n.2, 553 P.2d 442 (1976). Even a local rule violation that reflects an abuse of discretion is subject to harmless error analysis; as a result, it is normally not reversible error for a court to decline to follow its local rule. *Id.*; *State v. Robinson*, 153 Wn.2d 689, 697, 107 P.3d 90 (2005) (reversal is only appropriate if the claimed error was prejudicial such that within reasonable probabilities, had the error not occurred, the outcome would have been materially affected).

Ms. Rodriguez does not meet her burden of demonstrating either a rule violation or abuse of discretion. She argues that "[h]ad the judge ruled that 'exigent circumstances do not justify an emergency hearing,' then[,] while the Appellants would have disagreed with the judge, the order would have comported with the local rule." Br. of Appellant at 39. But LAR 0.7(e) does not require that a judge enter a written finding of the absence of exigent circumstances. It is possible that Judge Sypolt determined—as Commissioner Kim had, after reviewing Ms. Rodriguez's moving papers and hearing argument—that exigent circumstances were not presented. If, on the other hand, Judge Sypolt exercised his discretion not to follow the local rule, Ms. Rodriguez fails to argue why that was an abuse of discretion.

Finally, even if the rule was not followed and the failure to follow it was an abuse of discretion, Ms. Rodriguez demonstrates no prejudice. After Judge Sypolt denied Ms. Rodriguez's motion for emergency revision there were several hearings in which Ms. Rodriguez obtained all of the relief to which she was entitled. Any abuse of discretion was harmless.

*III. February 15, 2013 Orders and March 15, 2013 Denial of*
*Motion to Revise*

On February 15, 2013, Commissioner Royce Moe heard and decided whether Ms. Rodriguez had shown adequate cause entitling her to a hearing on her petition for modification and heard her motion for a protection order. His decisions on the motions were appealed to the superior court through a motion to revise. Judge Annette Plese denied the revision motion on March 15. As previously observed, in an appeal from an order denying revision of a court commissioner's ruling, we review the superior court's decision, not the commissioner's ruling. Accordingly, issues that Ms. Rodriguez attributes to statements made by Commissioner Moe are not properly before us unless and to the extent that Judge Plese explicitly adopted them as her own reasoning in denying the motion to revise.

Ms. Rodriguez contends that Judge Plese's decision not to revise the commissioner's orders was erroneous because "[t]he law as presented to Judge Plese

15

commands a more sweeping remedy than that ordered by Commissioner Moe." Br. of Appellant at 8-9.

Commissioner Moe, having found that domestic violence had occurred, issued a one-year domestic violence protection order that prohibited Mr. Mackenzie from committing acts of domestic violence against his children, prohibited him from consuming alcohol while the children were in his care, and ordered that he participate in family counseling with the children. In seeking revision, Ms. Rodriguez argued that "Commissioner Moe's response was inadequate to the grievousness of the facts." CP at 532.

RCW 26.50.060 identifies 13 types of relief that the superior court "may provide" upon notice and after hearing a petition for protection from domestic violence, among them being to "[r]estrain [a] respondent from committing acts of domestic violence." RCW 26.50.060(1)(a). As our Supreme Court has observed in applying chapter 26.50 RCW (the Domestic Violence Prevention Act), "[t]he term 'may' in a statute generally confers discretion." *Freeman*, 169 Wn.2d at 671. "'Where the decision or order of the trial court is a matter of discretion, it will not be disturbed on review except on a clear showing of abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" *Id.* (quoting *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)). Indeed, in matters dealing with the

16

welfare of children, trial courts are given broad discretion. *In re Marriage of Cabalquinto*, 100 Wn.2d 325, 327, 669 P.2d 886 (1983).

Ms. Rodriguez relies on *In re Marriage of Stewart*, 133 Wn. App. 545, 548-49, 137 P.3d 25 (2006) as holding that the psychological harm to children from watching one parent assault another is a proper statutory basis for issuing a protection order under RCW 26.50.060. While *Stewart* does stand for that proposition, it does not hold that psychological harm must be presumed every time children witness hostility, nor does it dictate the terms of protection that might be appropriate. In *Stewart*, a couple's children were shown to have suffered harm by a father's "repeated violence toward their mother, which was committed in their presence and resulted in the fear that he would again assault her." 133 Wn. App. at 556.

Here, Judge Plese was presented with quite different facts. The single gross misdemeanor charge against Mr. Mackenzie, which the State evidently intended to dismiss provided Mr. Mackenzie committed no further crime, was for a single event of pushing and shoving. While Mr. Mackenzie had also displayed (but not pointed) an unloaded gun, he recognized his poor judgment and was remorseful. Judge Plese pointed out that she does not take domestic violence lightly, but observed that Mr. Mackenzie had not even been arrested for domestic violence but had instead been summoned to respond to a complaint. She went on to explain why she believed that it was in the best interest of

17

the children for Mr. Mackenzie to continue to have primary custody and her confidence that the protection order crafted by the commissioner "got it right." CP at 548.

Ms. Rodriguez demonstrates that the trial court had the statutory authority to impose harsher restrictions on Mr. Mackenzie. But she fails to show an abuse of discretion by the trial court, let alone a clear abuse of discretion.

### IV. The Trial Court's Alleged Conflation of Ms. Rodriguez's First Round of Nonemergency Requests for Relief

The next act of the superior court to which Ms. Rodriguez assigns error is Judge Plese's alleged "conflation" of her petitions for modification and domestic violence protection, on the one hand, and her motions to vacate the parenting plan and for contempt, on the other. She points first to the judge's April 10 letter, in which Judge Plese said, "The Court notes that there is a show cause hearing set on April 19, 2013, with almost identical issues being raised that had previously been heard twice by this Court." CP at 378.

Judge Plese did not conflate the *motions*; they were heard on different days, decided in different oral rulings, and reduced to different orders. And in Judge Plese's April 10 letter, she did not say the *issues* were identical; she said they were "almost identical."

There were clearly overlapping issues. To prevail on the first round of nonemergency motions (modification of the parenting plan and the domestic violence

18

protection order), Ms. Rodriguez was required to show a substantial change of circumstances "on facts unknown to the court at the time of the prior decree or plan or arising since entry of the decree or plan." *In re Marriage of Tomsovic*, 118 Wn. App. 96, 105, 74 P.3d 692 (2003). Among arguments she offered for the changed circumstances was the recent release of Ms. Thomas's notes that she contended revealed for the first time Mr. Mackenzie's alleged subversion of the reconciliation process. She pointed to the Willard incident as evidence of the children's detrimental circumstances with Mr. Mackenzie as primary custodian and as support for finding that their best interests would be served by a modification. Among the bases for modifying the residential schedule in a parenting plan is a finding by the court that the nonmoving parent is in contempt of court.

The second round of nonemergency motions (the motion to vacate the parenting plan and to hold Mr. Mackenzie in contempt) required her to demonstrate contempt and to demonstrate fraud. The fraud she asserted was, again, Mr. Mackenzie's alleged intent to subvert the reconciliation process, which she argued, again, was supported by the release of Ms. Thomas's notes. She offered "as a credibility issue" a photo and declaration suggesting that Mr. Mackenzie had continued to handle a gun. CP at 516. The materials she submitted in support of her second round of motions even incorporated the declarations filed in support of her first round of motions, including the supplemental declarations of Ms. and Mr. Rodriguez in support of the motion to vacate, both of which "incorporate[d] as true . . . my prior declarations." CP at 357, 360.

19

Ms. Rodriguez has not demonstrated that Judge Plese labored under a misunderstanding when she observed that the second round of motions appeared to raise issues almost identical to the first.

Nor does the judge's May 17 letter denying Ms. Rodriguez's second motion for reconsideration reflect any misunderstanding. In that letter, the judge points out that in Ms. Rodriguez's second motion for reconsideration, she was "once again, bringing up the SAME facts presented at the original hearing, the revision hearing and in the motion to reconsider." CP at 503. The record reflects that Ms. Rodriguez did argue the same facts in the hearing before Commissioner Moe, the revision hearing before Judge Plese, and the first and second motions for reconsideration. There was no error.

### V. *April 26, 2013 Ruling Excluding Hearsay and Orders Denying Motions for Contempt and to Vacate the December 2011 Parenting Plan*

Ms. Rodriguez next complains about Commissioner Moe's denial of her motions for contempt and to vacate the existing parenting plan, as well as the commissioner's ruling that Ms. Thomas's treatment notes were inadmissible hearsay for purposes of the motion to vacate the parenting plan.

Commissioner Moe refused to consider Ms. Thomas's notes for "proof of the matter stated." CP at 517. In doing so, he might have viewed the medical hearsay exception somewhat too narrowly, because a child's statement to a therapist for purposes of diagnosis or treatment is admissible for the truth of the child's report. *See* ER

20

803(a)(4) (medical hearsay exception); *In re Pers. Restraint of Grasso*, 151 Wn.2d 1, 19, 84 P.3d 859 (2004) (statements to therapists can be admitted pursuant to ER 803(a)(4)); *State v. Alvarez-Abrego*, 154 Wn. App. 351, 366, 225 P.3d 396 (2010) (we presume a patient has a strong motive to be truthful and accurate, providing a significant guarantee of trustworthiness). Of course, the children's statements would *not* be admissible for the truth of what Mr. Mackenzie told the children. In instances of multiple hearsay, each level of hearsay must be independently admissible. ER 805.

Ms. Rodriguez does not argue that the commissioner incorrectly applied ER 803 and 805, however; she argues that the commissioner's evidentiary ruling was improperly "retroactive." She argues that "[a]ll evidentiary objections must be timely and specific," that Ms. Thomas's notes had been filed and considered in connection with prior motions, and that they thereby "became part of the court record upon which the Appellants could rely." Br. of Appellant at 25. She cites no authority for her argument that evidence considered without objection in connection with one motion is admitted for all purposes for the remainder of the lawsuit. The argument is frivolous.

Turning to the motions themselves, which Commissioner Moe stated he would have denied even if he had considered Ms. Thomas's notes admissible for all purposes, relief from a judgment pursuant to CR 60(b)(4)[4] is warranted only where the fraudulent

_____

[4] In Ms. Rodriguez's motion to vacate she requests relief under CR 60(b)(4) as well as CR 60(b)(11) and CR 60(c). On appeal, however, it appears that Ms. Rodriguez

conduct or misrepresentation caused the entry of the judgment "such that the losing party was prevented from fully and fairly presenting its case or defense." *Lindgren v. Lindgren*, 58 Wn. App. 588, 596, 794 P.2d 526 (1990) (citing *Peoples State Bank v. Hickey*, 55 Wn. App. 367, 372, 777 P.2d 1056 (1989)). The moving party "must establish the fraud, misrepresentation, or other misconduct by clear and convincing evidence." *Id.* When reviewing an order denying a motion to vacate pursuant to CR 60(b)(4), the appellate court's review is limited to determining whether the evidence shows that fraud, misrepresentation, or misconduct was highly probable. *Dalton v. State*, 130 Wn. App. 653, 666, 124 P.3d 305 (2005).

"Contempt of court" is defined by statute and includes intentional disobedience of a lawful court order. RCW 7.21.010. "In determining whether the facts support a finding of contempt, the court must strictly construe the order alleged to have been violated, and the facts must constitute a plain violation of the order." *In re Marriage of Humphreys*, 79 Wn. App. 596, 599, 903 P.2d 1012 (1995). Like a decision granting or denying a motion for relief from a judgment, a decision on a motion for contempt is reviewed for abuse of discretion. *Williams*, 156 Wn. App. at 28.

In a declaration in opposition to Ms. Rodriguez's motions Mr. Mackenzie had explained, responding to the therapy notes, that

---

assigns error only to the trial court's decision to deny the vacation of the order on the basis of fraud. *See* Br. of Appellant at 10, 24-25.

22

> because of JD's anger and conduct, my children have been afraid for their lives, my life and their mother's life for a long time. I repeatedly told them there was nothing I could do unless they shared their fears with their mom and counselors, including Carol Thomas. They wrote statements and reported their fears. When they complained about ongoing counseling with JD and his and [Ms. Rodriguez's] failure to take it seriously, I would remind them that they had to talk to Carol Thomas about it.

CP at 440. He also acknowledged that in 2012, when the children were going to meet with Mr. Rodriguez, "I was afraid for them. I did not tell them JD would kill them. However, I made it clear that they had to discuss their feelings with Carol Thomas and not be intimidated by JD as they had been for years." CP at 441.

Commissioner Moe regarded Ms. Thomas's notes as weak evidence and Ms. Rodriguez's reading of them as unreasonable. In announcing his decision denying Ms. Rodriguez's motions, he stated, "I'm having serious trouble connecting the dots there. . . . It doesn't make sense to me. This concept of fraudulent behavior in subverting a reconciliation—it just doesn't hold together." CP at 518. He added that even "[a]ssuming [the statements reflected in Ms. Thomas's notes] are true, I think dad has offered his explanation. He was trying to basically make sure the kids made those comments to Carol Thomas because those are some of the issues that he felt they needed to work on." CP at 517-18.

The trial court's decision is well supported by the record. The parenting plan does not include any commitment by Mr. Mackenzie to participate in or support "reconciliation counseling." At most, the plan's terms suggest that the children's

23

ongoing therapy with Ms. Thomas (which *is* required by the plan) might lead to an effort at reconciliation with Mr. Rodriguez. Ms. Thomas's notes, along with Mr. and Ms. Rodriguez's declarations, were the only evidence offered from which the trial court was asked to conclude that Mr. Mackenzie induced Ms. Rodriguez to go along with the December 2011 parenting plan with a preconceived plan to subvert any efforts at reconciling the children with Mr. Rodriguez. The evidence falls far short of clear and convincing. The trial court did not abuse its discretion in denying Ms. Rodriguez's motion to vacate the plan.

As for the motion for contempt, Ms. Rodriguez contended that Mr. Mackenzie violated the parenting plan by disparaging her in front of the children and by subverting the reconciliation process. "Whether contempt is warranted in a particular case is a matter within the sound discretion of the trial court; unless that discretion is abused, it should not be disturbed on appeal." *In re Pers. Restraint of King*, 110 Wn.2d 793, 798, 756 P.2d 1303 (1988). Strictly construing the parenting plan, the trial court did not abuse its discretion in concluding that Ms. Rodriguez failed to prove any clear, intentional violation.

### VI. Attorney Fees as Sanctions

Finally, Ms. Rodriguez challenges Commissioner Moe's imposition of $1,125 in attorney fees as sanctions for pursuing frivolous motions. She contends that his finding that the motions were frivolous is not supported by the evidence. We review an award of

24

sanctions under CR 11 for abuse of discretion. *Wash. State Physicians Ins. Exch. &
Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 338, 858 P.2d 1054 (1993).

CR 11 authorizes sanctions when a complaint lacks a factual or legal basis and the
attorney who signed the complaint failed to conduct a reasonable inquiry into the factual
and legal bases of the claims. *Bryant v. Joseph Tree, Inc.*, 119 Wn.2d 210, 220, 829 P.2d
1099 (1992). The reasonableness of the claim is evaluated by an objective standard,
meaning that the trial court should ask whether a reasonable attorney in similar
circumstances could believe his or her actions were factually and legally justified. *Id.*
Under CR 11, sanctions may be appropriate when some, but not all, of a party's claims
are frivolous. *See Biggs v. Vail*, 119 Wn.2d 129, 137, 830 P.2d 350 (1992).

Ms. Rodriguez's most recent spate of litigation relied upon (1) Mr. Mackenzie's
poor exercise of judgment on September 19, 2012 in attempting to get Ms. Willard to
leave his home and (2) his perceived lack of support for a reconciliation process. She
used these as bases for multiple attempts to diminish his rights under a parenting plan to
which she agreed in December 2011.

Without an order clearly requiring Mr. Mackenzie to participate in or facilitate a
reconciliation process and only therapy notes from which to speculate about Mr.
Mackenzie's intent, it should have been obvious to Ms. Rodriguez that her motions, and
particularly her last motions to vacate the parenting plan and to find Mr. Mackenzie in

25

contempt, were frivolous. The trial court did not abuse its discretion in sanctioning Ms. Rodriguez and her attorney.

Mr. Mackenzie asks that this court award him attorney fees on appeal under CR 11, for Ms. Rodriguez's intransigence, and in light of the frivolous nature of this appeal. CR 11 is a superior court rule that "does not explicitly authorize us to award sanctions." *Schorno v. Kannada*, 167 Wn. App. 895, 904, 276 P.3d 319, *review denied*, 175 Wn.2d 1018 (2012). RAP 18.9 authorizes us to award sanctions against a party who uses the Rules of Appellate Procedure for the purposes of delay, files a frivolous appeal, or fails to comply with the Rules of Appellate Procedure.

An appeal is frivolous if we are convinced that it presents no debatable issues on which reasonable minds could differ and is so lacking in merit that there is no possibility of reversal. *In re Marriage of Foley*, 84 Wn. App. 839, 847, 930 P.2d 929 (1997). A civil appellant has a right to appeal under RAP 2.2, and all doubts as to whether the appeal is frivolous should be resolved in favor of the appellant. *See Streater v. White*, 26 Wn. App. 430, 434-35, 613 P.2d 187 (1980). Almost all of the decisions appealed by Ms. Rodriguez were discretionary ones and there is no debatable basis for arguing that the trial court's perception of the interests of the children and evaluation of the evidence amounted to an abuse of discretion. While Ms. Rodriguez's conduct in this forum has not been intransigent, her appeal is frivolous. We award Mr. Mackenzie attorney fees and costs subject to compliance with RAP 18.1(d).

No. 31633-5-III
*In re Marriage of Mackenzie*

Affirmed.

A majority of the panel has determined that this opinion will not be printed in the

Washington Appellate Reports but it will be filed for public record pursuant to RCW

2.06.040.

_____
Siddoway, C.J.

WE CONCUR:

_____
Fearing, J.

_____
Lawrence-Berrey, J.

27