IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Marriage of<br><br>JOCELYN CHRISTINE STEWART,<br><br>                Respondent,<br><br>  and<br><br>JONATHAN DAVID HOAG,<br><br>                Appellant. | No. 88031-4-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

HAZELRIGG, C.J. — Jonathan Hoag appeals the trial court's determination that he did not show adequate cause for a hearing on his petition to modify a parenting plan. Because Hoag does not establish that the trial court abused its discretion, we affirm.

FACTS

In April 2019, the superior court dissolved Hoag's marriage to Jocelyn Stewart and entered an agreed parenting plan for their four children. The 2019 parenting plan did not establish a residential schedule. Instead, it provided the children would live with Stewart, who resides in Tacoma, except when they were scheduled to live with Hoag and that Stewart and Hoag would "put forth a good faith effort to discuss and agree to a parenting schedule for the children on a monthly basis" and "discuss and agree to a schedule no later than the 20th of each month to take effect for the following month."

In February 2020, Hoag petitioned for a minor modification to the parenting plan. Hoag alleged among other things that the 2019 parenting plan was problematic in that it did not establish any mandatory minimum amount of residential time for him and Stewart was intentionally preventing him from having residential time with the children.

Trial on Hoag's 2020 modification petition took place in November 2021. At the time, Hoag, a judge advocate for the United States Army, was stationed in Alabama, though he maintained a home in Tacoma with his new spouse and testified that he had been flying back to exercise his residential time with the parties' children. Hoag also testified that he anticipated the Army would return him permanently to Tacoma in June or July 2022. Hoag requested a residential schedule that "would allow [him], when able, upon provision of 30-days' notice to [Stewart], to be able to exercise week-on, week-off time with [the] children when [he was] able to be in [Washington]."

Following the 2021 trial, the superior court modified the 2019 parenting plan, observing that there had been a substantial change in circumstances because "the current language in the Parenting Plan is unworkable when there is high conflict." However, the court rejected Hoag's alternating week proposal, saying that it "does not work with this level of conflict as well as Mr. Hoag's distance and unpredictable career." The court did not find it credible that Hoag would return to Tacoma permanently, observing that "[t]here are no guarantees with the Army," and found that the parties had a "long-distance relationship." The court designated Stewart the primary residential parent and directed that during the school year, Hoag "shall

have the children the first and third 'long' weekend of each month, from Thursday after school until Monday return to school." The court also designated Stewart the sole decisionmaker for the children's nonemergency healthcare decisions, citing "the history of each parent's participation in decision-making," "the level of conflict between the parties," and the "geography between the parties." The court indicated that its goal in fashioning a new parenting plan was "to reduce the conflict, if not eliminate it completely."

In January 2022, Hoag relocated to Tacoma, and in January 2024, he moved to modify the parenting plan. Hoag requested a major modification, arguing it was warranted because "the children's current living situation is harmful to their physical, mental, or emotional health" and it "would be better for the children if the order is changed." Hoag again requested a residential schedule where the parents had alternating weeks with the children. On March 14, 2024, a superior court commissioner determined Hoag had not established adequate cause to proceed to trial on his petition for a major modification. Hoag moved to revise the commissioner's ruling, and on April 19, 2024, a superior court judge denied revision and adopted the commissioner's rulings.

Hoag timely appealed.

ANALYSIS

I.      Standard of Review & Legal Standards

Hoag sought modification under RCW 26.09.260(2)(c). To justify a modification under that subsection, Hoag was required to show that (1) a "substantial change ha[d] occurred in the circumstances of" the children or Stewart

that was not contemplated by the existing parenting plan, (2) the children's "present environment [wa]s detrimental to [their] physical, mental, or emotional health," (3) the modification was "in the best interest of the child[ren] and necessary to serve the best interests of the child[ren]," and (4) "the harm likely to be caused by a change of environment [wa]s outweighed by the advantage of a change to the child[ren]." RCW 26.09.260(1), (2)(c). Furthermore, before Hoag was entitled to a full modification hearing, he needed to "demonstrate that 'adequate cause' exist[ed] to modify the permanent parenting plan." *Bower v. Reich*, 89 Wn. App. 9, 14, 964 P.2d 359 (1997); RCW 26.09.270. To meet the adequate cause requirement, a petitioner must set forth "specific factual allegations" that, if proven, would justify a modification. *Id.*

"We review a trial court's adequate cause determination for an abuse of discretion." *In re Marriage of Hannah*, 27 Wn. App. 2d 577, 585, 541 P.3d 372 (2023), *review denied*, 2 Wn.3d 1015 (2024). "'A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons,'" or if it bases a discretionary ruling on an error of law. *In re Marriage of Muhammad*, 153 Wn.2d 795, 803, 108 P.3d 779 (2005) (quoting *In re Marriage of Littlefield*, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997)); *Lopez-Stayer v. Pitts*, 122 Wn. App. 45, 51, 93 P.3d 904 (2004).

II.    Adequate Cause Determination

In determining that Hoag failed to demonstrate adequate cause to proceed to a full modification hearing, the trial court first concluded that Hoag did not satisfy his burden to show a substantial change in circumstances, reasoning in part that

Hoag's relocation to Tacoma was contemplated by the 2021 plan. Hoag argues that this was error.[1] But, the trial court also concluded that Hoag did not present enough evidence to show adequate cause as to the requirements in RCW 26.09.260(2)(c): that the children's present environment was detrimental and the harm likely to be caused by a change in environment was outweighed by the advantage of a change. And, as further analyzed herein in Sections II.A and II.B, Hoag does not show that the trial court abused its discretion in those regards. Thus, even assuming without deciding that the trial court erred when it found no substantial change in circumstances, Hoag does not establish an entitlement to appellate relief.

A.      Detrimental Present Environment

Hoag renews various claims about Stewart's behavior that he asserts were sufficient to establish that the children's present environment was detrimental. He points out that in December 2021, Stewart married a man who was later arrested and incarcerated for possessing child pornography; he asserts that a video Stewart produced in 2022 for a contest shows she had suicidal ideations; he claims that

---

[1] In support of reversal, Hoag relies on trial court documents, including discovery responses, that were not before the commissioner at the time of the adequate cause hearing. *See, e.g.*, Br. of Appellant at 28 (citing CP at 293); Br. of Appellant at 30 (citing CP at 292). Hoag also attached more than 250 pages of exhibits as appendices to his briefs without submitting a motion to supplement the record or otherwise seeking permission from this court as required by RAP 9.11(a) and RAP 10.3(a)(8). We do not consider these documents and exhibits.

Stewart, for her part, cites to clerk's papers page numbers that are outside of the range that was transmitted from the trial court. *See, e.g.*, Br. of Resp't at 14 (citing CP at 959-70); Br. of Resp't at 27 (citing CP at 979, 980-81). We do not consider either party's factual assertions that are not supported by accurate citations to the record. *See* RAP 10.3(a)(5) ("Reference to the record must be included for each factual statement."); RAP 10.3(a)(6) (argument section of brief should include references to relevant parts of the record); *see also In re Est. of Lint*, 135 Wn.2d 518, 532, 957 P.2d 755 (1998) (appellate court will not assume obligation to "comb the record" for evidence to support party's arguments).

Stewart has engaged in a pattern of behavior designed to alienate him from participating in the children's extracurricular activities and participating in their medical care; and he contends that Stewart has a need to involve the children in conflict. However, Hoag does not dispute that Stewart dissolved her marriage after learning of her spouse's conduct, he points to no evidence that the children were exposed to any of Stewart's former spouse's unlawful behavior, and it is undisputed that Stewart's former spouse was not a part of the children's environment at the time of the adequate cause hearing. *Cf. In re Marriage of Ambrose*, 67 Wn. App. 103, 834 P.2d 101 (1992) (child's present environment "is the environment that is being provided to a child by the residential child's parent . . . , *contemporaneously with the trial court's consideration of the matter*." (emphasis added)). As for the video, Hoag cites no authority for the proposition that the court was required to accept, based on Stewart's statements in a video she submitted for a contest to win a car, that she had suicidal ideations. In any case, although Hoag testified that he learned about the video from one of the parties' children, he points to no evidence that any of the children had actually seen the video.

Furthermore, the trial court found that "a lot of [Hoag's] concerns . . . are basically about how the [parties] parent" and although "there might be some issues with . . . the children's mental and emotional health," that was a product of the conflict between the parties, which was "something that the two of [them] control." Having reviewed the record, we conclude that the trial court did not abuse its discretion by making this finding. Hoag challenges the trial court's decision not to

consider any hearsay from the children as it relates to their emotional states, asserting that the "Superior Court's refusal to consider this evidence as admissible . . . constitutes a serious error and an abuse of discretion, particularly because the [c]ourt has routinely permitted . . . Stewart to introduce claims through child hearsay." However, he does not point to any hearsay that he believes the trial court erroneously admitted, much less cite any authority for the proposition that a hearsay error in Stewart's favor relieves Hoag of specifying, which he has not done, what hearsay he thinks the trial court should have considered and why the trial court erred by excluding it.

Hoag also insisted in the trial court that "[t]here has never been one time where [he] has created conflict for the children" and all conflict was attributable to Stewart. But Hoag's contention was based largely on his conclusory assertions about Stewart's motives and self-serving inferences from the record that he fails to show the trial court was required to draw.[2] *Cf. In re Parentage of Jannot*, 110 Wn. App. 16, 23, 37 P.3d 1265 (2002) (adequate cause requires "'something more than prima facie allegations which, if proven, might permit *inferences* sufficient to establish grounds for a custody change.'" (emphasis added) (quoting *In re Marriage of Roorda*, 25 Wn. App. 849, 852, 611 P.2d 794 (1980))), *aff'd*, 149 Wn.2d 123, 65 P.3d 644 (2003). While some of Stewart's alleged behavior is petty

---

[2] For example, Hoag cites page 171 of the clerk's papers for the proposition that the parties' oldest son, D.H., "wanted to attend counseling" and "requested to seek counseling," but Stewart prevented it. *See* Br. of Appellant at 39-40. But Hoag's sworn declaration, the document at page 171 of the clerk's papers, states only that Hoag "talked to [D.H.] *and got him to agree to see a family counselor*" and Stewart objected to D.H.'s seeing the same counselor as Hoag. (Emphasis added.) Hoag then asserts, without citation to the record, that it "is evident that D.H.'s best interests were not a priority for . . . Stewart and she likely feared what evidence may have been produced through D.H.'s counseling." Br. of Appellant at 40.

and undeniably unconstructive, the record reveals that much of the conflict between the parties is equally driven by Hoag.

Although Hoag claims that the detriment to the children is "evident," he does not persuade us that the trial court had *no tenable basis* to conclude that any detriment was due to the high level of conflict between the parties and not their residing in Stewart's home the majority of the time. *Cf. Jannot*, 110 Wn. App. at 25 ("The court should require something more than unsupported conclusions and the unfortunate petty sniping that sometimes goes on between warring parties to a dissolution action."); *Anderson v. Anderson*, 14 Wn. App. 366, 368-69, 541 P.2d 996 (1975) (modification of custody not proper remedy for disagreements between parents). We cannot say that the trial court, which had a unique opportunity to observe these parties, both of whom are attorneys who represented themselves pro se at the adequate cause hearing, erred when it found that Hoag failed to demonstrate adequate cause as to the requirement in RCW 26.09.260(2)(c) that he show the children's present environment is detrimental.[3] *Cf. In re Parentage of Schroeder*, 106 Wn. App. 343, 349, 22 P.3d 1280 (2001) ("Because of the trial court's unique opportunity to observe the parties, the appellate court should be 'extremely reluctant to disturb child placement dispositions.'" (quoting *In re Marriage of Schneider*, 82 Wn. App. 471, 476, 918 P.2d 543 (1996), *overruled on other grounds by In re Marriage of Littlefield*, 133 Wn.2d 39, 940 P.2d 1362 (1997))).

---

[3] As the trial court also observed, whether the high conflict between the parties would justify *minor* modifications to the parenting plan could still be litigated at the parties' upcoming trial on Stewart's petition for a minor modification, with respect to which the parties had previously agreed there was adequate cause.

Hoag contends otherwise, but none of the authorities Hoag relies on persuade us that the trial court abused its discretion. He asserts that the trial court erred by requiring a greater showing of detriment than statutorily required, citing *In re Marriage of Zigler*, 154 Wn. App. 803, 813, 226 P.3d 202 (2010) in support of his contention that "even an inference of harm can be relied upon." In *Zigler*, the court held that it was *reasonable* for the court to infer, from the presence of domestic violence in the child's primary residence, that the child's environment was detrimental. 154 Wn. App. at 814. But the court did not hold that the trial court was *required* to draw that inference, and in any case, domestic violence is not at issue in the instant case.

Hoag next relies on *In re Marriage of Lemke*, 120 Wn. App. 536, 85 P.3d 966 (2004) and *In re Marriage of Murphy*, 48 Wn. App. 196, 199, 737 P.2d 1319 (1987) for the proposition that detriment can take many forms. While that may be true, neither *Lemke* nor *Murphy* supports Hoag's claim that the trial court abused its discretion here. In *Lemke*, the trial court found adequate cause based on a mother frequently leaving the parties' children in the care of their maternal grandmother. 120 Wn. App. at 539. There, this court *reversed* because the father acknowledged that the grandmother was a "wonderful woman" who could provide the necessary care and, thus, did not "show, or even suggest, that [the mother's] home [wa]s detrimental to the children." *Id.* at 541. In *Murphy*, this court held that the trial court properly concluded that an alternating week residential schedule was "unworkable and detrimental" given that one parent had moved out of state. 48 Wn. App. at 200. *Lemke* and *Murphy* are inapposite, and Hoag's reliance on them

misplaced.

Finally, while Hoag claims the trial court adopted Stewart's assertion that "the detriment or danger to the child, generally, must be quite severe," the record does not support this claim.[4]

B.    Balancing of Harms and Children's Best Interest

Hoag also contends that the trial court did not properly weigh the advantages of a change in the residential schedule against the presumed detriment of a change or adequately consider the children's best interests.  He asserts that an alternating week residential schedule aligns with the children's own expressed wishes, but he does not support this assertion with reference to any evidence in the record.  *Cf.* RAP 10.3(a)(6) (argument section of brief should contain references to relevant parts of the record).  In any case, Hoag's assertion fails to recognize that a child's expressed desires are not determinative of what is in that child's best interest.  *See In re Dependency of E.H.*, 191 Wn.2d 872, 889-90, 427 P.3d 587 (2018) (recognizing child's stated wishes may be misaligned with guardian ad litem's assessment of child's best interests).  Hoag also asserts that an alternating week residential schedule would provide the children with greater stability and access to extracurricular activities and would "foster a more supportive and stable environment for their continued development."  However, he does not articulate why this is so in light of the fact that such a schedule would not reduce the number of transitions or opportunities for conflict between the parties.  While

---

[4] The trial court merely observed that Stewart had cited the correct statute, RCW 26.09.260.

Hoag plainly disagrees with many of Stewart's parenting decisions and believes his home is better suited for the children, "[c]hanges in custody should not be made simply because the trial court prefers one parent to the other." *Anderson*, 14 Wn. App. at 368.

### III. Fees on Appeal

Stewart requests an award of fees on appeal under RCW 26.09.140,[5] the discretionary attorney fee statute for dissolution proceedings. In exercising our discretion under that statute, "'we consider the issues' arguable merit on appeal and the parties' financial resources, balancing the financial need of the requesting party against the other party's ability to pay.'" *In re Marriage of French*, 32 Wn. App. 2d 308, 319, 557 P.3d 1165 (2024) (quoting *In re Marriage of Kim*, 179 Wn. App. 232, 256, 317 P.3d 555 (2014)). Having considered these factors, we exercise our discretion to deny Stewart's request for fees on appeal.

We affirm.

_____

WE CONCUR:

_____          _____

---

[5] Stewart also requests an award of costs. That request should be directed to a commissioner or court clerk as provided in Title 14 RAP.