[Nos. 39752-8-II; 39952-1-II.   Division Two.   May 1, 2012.]

AMY CATHERINE SCHORNO, *Petitioner*, v. KEVIN KANNADA ET AL., *Respondents*.

*Jon E. Cushman* (of *Cushman Law Offices PS*) and *Lenell R. Nussbaum*, for petitioner.

*Shellie McGaughey* and *Dan'L W. Bridges* (of *McGaughey Bridges Dunlap PLLC*), for respondents.

¶1 JOHANSON, J. — Amy Schorno, an adult, sued Kevin Kannada, a minor, for the torts of outrage, negligent infliction of emotional distress, defamation, assault, and battery. Schorno alleged that during a four-and-a-half-year period, Kannada sexually and physically assaulted her. Kannada counterclaimed for childhood sexual abuse and moved for partial summary judgment on liability. The trial court granted partial summary judgment, finding Schorno strictly liable on Kannada's childhood sexual abuse claim. We granted Schorno's petition for discretionary review. We hold that Kannada has not alleged a valid tort cause of action. We

further hold that genuine issues of material fact are in dispute and the parties' heavily-intertwined and mutually-exclusive counterclaims precluded partial summary judgment. We reverse and remand.

## FACTS[1]

¶2 In 2006, Schorno sued Kannada and his parents, alleging that Kannada assaulted her physically, sexually, and psychologically during a sexual relationship that lasted from when Kannada was 14 years old to when he was 18 years old. Schorno sought damages for outrage, negligent infliction of emotional distress, defamation, assault, and battery. Kannada counterclaimed for child sexual abuse for the sexual contact and sexual intercourse that occurred before he was 16.

¶3 Schorno testified at her deposition that Kannada's first intimate contact with her was when he, at age 14, kissed her in her garage in December 2000. She testified that she did not kiss him back. Schorno testified that she pushed Kannada back and told him to stop it and that Kannada said he was sorry. Schorno then threatened to tell her husband, but Kannada responded that if she did, Kannada would tell Schorno's husband that she had initiated the kiss. Kannada told Schorno that people would believe his accusation because he was a "kid." Clerk's Papers (CP) at 85. Kannada also threatened that if he made this accusation, Schorno would not be allowed to see her children anymore. Schorno testified that from this time, she was very afraid of Kannada and felt trapped by his threat to tell her husband and the disruption it might cause to her children's lives.

---

[1] On review of summary judgment, we view the relevant facts in the light most favorable to Schorno, the nonmoving party. *See Jones v. State*, 170 Wn.2d 338, 342 n.1, 242 P.3d 825 (2010).

¶4 In the second of her two declarations,[2] Schorno said she was afraid of Kannada from the first time he kissed her. She stated that Kannada was taller, heavier, and stronger than she was. She added that "[a]lmost immediately after the first unwanted kiss," Kannada would follow her into her house and fondle or kiss her. CP at 140. She stated that if she tried to leave, he would block the door and prevent her from escaping.

¶5 Schorno testified that Kannada's first sexual contact with her also occurred in December 2000. She testified that she was driving Kannada home when he exposed himself and told Schorno to touch him. Schorno refused, but Kannada told her she would do it anyway and placed her hand on his genitals. Schorno testified that she then masturbated Kannada while driving. She further testified that she masturbated Kannada at her home two or three more times in December.

¶6 Schorno testified that they first had sexual intercourse in January 2001 and that this sexual intercourse was without her consent. She also testified that Kannada started threatening her with violence and using violence against her in "early 2001," shortly after he first had sexual intercourse with her. CP at 96-97. He hit her, choked her, and threatened to kill her, her husband, and her family dog. He knocked her to the ground, bruised her body, and broke her nose.

¶7 Kannada's theory of the case was that Schorno "groom[ed]" him for sexual abuse. CP at 41. According to Kannada's complaint,

---

[2] A party may not create a genuine issue of fact with a self-serving declaration that contradicts unambiguous deposition testimony without explanation. *Klontz v. Puget Sound Power & Light Co.*, 90 Wn. App. 186, 192, 951 P.2d 280 (1998) (quoting *Marshall v. AC&S, Inc.*, 56 Wn. App. 181, 185, 782 P.2d 1107 (1989)). However, Schorno's declarations do not contradict her deposition testimony but, rather, add facts that were not brought out at her deposition. Moreover, she explains that she did not mention these facts at deposition because she was not asked about them, and her attorneys instructed her not to volunteer additional information.

Grooming has the effect of depriving a child victim of sexual abuse from understanding or realizing that the conduct of the adult in performing sexual contact or sexual intercourse is wrong. Grooming has the effect of conditioning and desensitizing the childhood victim of sexual abuse, rendering them incapable and/or unable to form the mental thought process to form or give consent to the sexual contact and/or sexual intercourse with the adult.

CP at 41. Kannada further alleged that because of Schorno's "grooming," he lacked the capacity to consent to sexual contact or sexual intercourse even after he turned 16. CP at 40-41.

¶8 Kannada moved for partial summary judgment against Schorno on his claim for child sexual abuse, arguing that she was liable as a matter of law for any sexual contact that occurred before he began using force and threats of force against her. The trial court granted summary judgment on this issue without setting forth findings or conclusions.

¶9 Schorno petitioned for discretionary review on a number of issues, and a commissioner of this court denied discretionary review. We granted Schorno's motion to modify the commissioner's ruling on the sole issue of whether Schorno is liable for child sexual abuse against Kannada as a matter of law.

## ANALYSIS

### I. STANDARD OF REVIEW

¶10 We review a grant of summary judgment de novo. *Briggs v. Nova Servs.*, 166 Wn.2d 794, 801, 213 P.3d 910 (2009). Summary judgment is appropriate where, viewing all facts and resulting inferences most favorably to the nonmoving party, the court finds no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Briggs*, 166 Wn.2d at 801. "A

genuine issue of material fact exists where reasonable minds could differ on the facts controlling the outcome of the litigation." *Ranger Ins. Co. v. Pierce County*, 164 Wn.2d 545, 552, 192 P.3d 886 (2008).

## II. CAUSE OF ACTION FOR CHILDHOOD SEXUAL ABUSE

¶11 The parties assume, without analysis, that there exists in Washington a separate civil cause of action for childhood sexual abuse. Kannada argued that (1) a violation of the criminal laws against child molestation and child rape gives rise to strict liability in tort and (2) the only defense to the civil tort is the criminal defense of duress that Schorno failed to establish as a matter of law. We disagree with Kannada.

¶12 First, RCW 4.16.340(1) establishes the statute of limitations for all claims based on intentional "childhood sexual abuse." The statute defines "childhood sexual abuse" as conduct against a complainant who was less than 18 years old that violates chapter 9A.44 RCW (defining sex offenses) or RCW 9.68A.040 (sexual exploitation of a minor), "or prior laws of similar effect at the time the act was committed." RCW 4.16.340(5).

¶13 This statute applies to all tort claims where the gravamen of the action is childhood sexual abuse. *C.J.C. v. Corp. of Catholic Bishop of Yakima*, 138 Wn.2d 699, 709, 985 P.2d 262 (1999) (quoting *DeYoung v. Providence Med. Ctr.*, 136 Wn.2d 136, 147, 960 P.2d 919 (1998)). Thus, RCW 4.16.340(1) provides the statute of limitations for claims such as medical malpractice or negligence predicated on intentional childhood sexual abuse. *C.J.C.*, 138 Wn.2d at 709.

¶14 By its plain terms, RCW 4.16.340 provides only the statute of limitations for claims based on intentional childhood sexual abuse. Nowhere does the statute provide for a separate cause of action based on such conduct. As the court tacitly recognized in *C.J.C.*, a party must still assert a tort

cause of action, such as medical malpractice, negligence, or battery, to proceed under RCW 4.16.340. *See C.J.C.*, 138 Wn.2d at 709-10.

¶15 The statute of limitations is not at issue here. Rather, the question is whether Kannada was entitled to judgment as a matter of law based on Schorno's admission that she had sexual contact and sexual intercourse with Kannada before he was 16 years old. Kannada cites no authority for the proposition that a party may establish tort liability simply by showing a violation of a criminal statute identified in a statute of limitations, such as RCW 4.16.340. Instead Kannada must prove every element of a valid tort claim.

¶16 Because Kannada did not assert or prove the elements of a valid tort cause of action, he was not entitled to partial summary judgment on the liability issue. We accordingly reverse the trial court's grant of partial summary judgment in Kannada's favor and remand for further proceedings.

¶17 Moreover, even if we treated Kannada's claim as a valid tort claim, such as battery, we would reverse based on genuine issues of material fact presented by the parties' intertwined counterclaims, as noted below.[3]

### III. Genuine Issues of Material Fact

¶18 The parties, through their counterclaims against each other, assert mutually exclusive versions of events. Schorno alleges that Kannada forced her into sexual activity from the beginning, while Kannada alleges that Schorno

---

[3] Although duress is a defense to the criminal statutes Schorno allegedly violated, duress may not be the only defense to Kannada's tort claim. Because the facts of this case are as yet unsettled, we decline to reach the parties' arguments as to the applicable defenses to child rape and child molestation in a civil action. To make such a determination would require us to resolve a thorny question of law based on facts that are as yet largely hypothetical. It would be inadvisable for us to determine whether an adult victim of forcible rape by a minor under 16 can at the same time be civilly liable for child rape or child molestation where, as here, no fact finder has determined whether any forcible rape actually occurred.

"groom[ed]" him and thus committed childhood sexual abuse. CP at 41. Because these counterclaims are heavily intertwined and many genuine issues of material fact remain, we hold that partial summary judgment on Kannada's claim of childhood sexual abuse was inappropriate.

¶19 Although Washington has not directly addressed the appropriateness of summary judgment when there are intertwined counterclaims, several jurisdictions have held that when a counterclaim raises issues that are inextricably interwoven or intertwined with those raised in the complaint, partial summary judgment is not appropriate. *See, e.g., Lombari v. Scott Brass, Inc.*, 627 A.2d 330, 331 (R.I. 1993) (partial summary judgment should have been denied where unresolved counterclaims were inextricably intertwined with claims resolved on partial summary judgment); *GTE Automatic Elec. Inc. v. Martin's Inc.*, 127 A.D.2d 545, 512 N.Y.S.2d 107, 108-09 (1987) (where claim and counterclaim are directly related so as to be inextricably interwoven and inseparable, partial summary judgment is unavailable); *Netterville v. Osborn*, 139 So. 2d 921, 923 (Fla. Dist. Ct. App. 1962) (summary judgment that party was liable on note was inappropriate where unresolved fraudulent inducement counterclaim remained).

¶20 Division One of our court applied a similar rule when reviewing a directed verdict in *Amtruck Factors v. International Forest Products*, 59 Wn. App. 8, 19, 22, 795 P.2d 742 (1990), *review denied*, 116 Wn.2d 1003 (1991). There, the plaintiff sought payment on a set of invoices, while the defendant counterclaimed that the agreements underlying the invoices were void for being procured through fraud. *Amtruck Factors*, 59 Wn. App. at 13. The trial court dismissed the counterclaims, finding that the defendant had not shown that the alleged fraud damaged it. *Amtruck Factors*, 59 Wn. App. at 13. Division One held that the trial court should not have dismissed the counterclaims because they were "inextricably intertwined" with the

plaintiff's claims for payment under the agreements. *Amtruck Factors*, 59 Wn. App. at 22. Division One held that until the jury resolved whether the plaintiff participated in the alleged fraud, it was not possible to determine the validity of the underlying agreements. *Amtruck Factors*, 59 Wn. App. at 22.

¶21 So too here, the claims Kannada and Schorno allege are inextricably intertwined. Both parties' theories of the case cannot be true. If Schorno committed intentional sexual abuse against Kannada, she cannot as a practical matter recover for Kannada's alleged physical and psychological abuse against her. Thus, granting partial summary judgment in favor of Kannada's childhood sexual abuse claim all but eliminates Schorno's intertwined claim that Kannada was the sole perpetrator of sexual misconduct.

¶22 As such, although the trial court purported to enter only partial summary judgment on Kannada's claim, it effectively resolved both Kannada's claims and Schorno's claims in Kannada's favor. This was inappropriate because numerous issues of material fact remain as to what occurred between the parties and who was responsible. Because the parties' claims are inseparable and mutually exclusive, and genuine issues of material fact exist, the entire set of facts should be presented to a jury without an instruction from the trial court that one party is liable as a matter of law.

¶23 Accordingly, even if we were to assume that Kannada has stated a valid tort cause of action, we would reverse the trial court's order granting partial summary judgment to Kannada and remand for further proceedings.

## ATTORNEY FEES

¶24 Kannada moves for attorney fees and costs under both RAP 18.9 and CR 11. He bases his request on Schorno's filing for discretionary review, as well as our decision to accept her over-length briefing on discretionary

review and our decision to grant Schorno's motion to modify the commissioner's ruling without accepting briefing from Kannada.

■■ ¶25  CR 11, a superior court rule, does not explicitly authorize us to award sanctions. *See Kinney v. Cook*, 150 Wn. App. 187, 195, 208 P.3d 1 (2009). RAP 18.9 authorizes us to award sanctions against a party who uses the Rules of Appellate Procedure for the purposes of delay, files a frivolous appeal, or fails to comply with the Rules of Appellate Procedure. But Kannada fails to set forth any legal authority entitling him to attorney fees aside from his bare citation to RAP 18.9.

¶26  Moreover, Kannada's request for sanctions rests in large part on our decisions in this case. Kannada argues, without citations to authority, that these decisions were erroneous under the Rules of Appellate Procedure. There is no reasonable argument that Schorno may be sanctioned under RAP 18.9 for our decisions. We deny Kannada's motion for attorney fees and costs.

¶27  We reverse and remand.

QUINN-BRINTNALL and VAN DEREN, JJ., concur.

After modification, further reconsideration denied June 12, 2012.

Review denied at 175 Wn.2d 1018 (2012).