## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Marriage of | No. 54617-5-II |
| CARRISA N. BROWN, | |
| Petitioner, | |
| SEAN A. BROWN, | |
| Respondent, | |
| DEPARTMENT OF SOCIAL AND HEALTH SERVICES, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — The Washington Department of Social and Health Services (DSHS) Division of Child Support (DCS) appeals an order granting Sean Brown attorney fees under CR 11. Because there is no evidence that DCS committed sanctionable conduct, we hold that the trial court erred in awarding attorney fees. Thus, we reverse the trial court's award of attorney fees and remand for the trial court to vacate the order.

## FACTS

The motion at issue arises from a dispute between Sean and DCS over an amount of back due child support. Sean Brown filed the motion in the dissolution action between himself and Carissa Brown.[1]

---

[1] Because Sean and Carissa Brown share a last name, they are being referred to by their first names for clarity. No disrespect is intended.

DCS manages Washington's child support program and has the authority to establish and enforce a noncustodial parent's child support obligation. RCW 26.23.030(1); RCW 74.20.330; 74.20A.030(1)-(2). DCS has authority to enforce child support obligations for any noncustodial parent when the child receives Temporary Assistance for Needy Families (TANF). RCW 74.20.330; RCW 74.20A.030(1)-(2). DCS also provides child support enforcement services to parents who request that service. RCW 74.20.040(2).

Sean and Carrisa divorced in 2008. They have one child. In the decree of dissolution, Pacific County Superior Court named Carrisa as the primary residential parent, and ordered Sean to pay $471 per month in child support. In 2011, the court increased Sean's child support obligation to $656. According to DCS's brief, Carrisa requested DCS provide child support enforcement, and DCS's role was limited to enforcing child support orders after they were entered.

In 2012, venue changed to Grays Harbor County Superior Court. In October 2012, that court entered an order making Sean the primary residential parent and modifying Sean and Carrisa's child support order. The court listed Carrisa as the obligor parent, but set her obligation at zero, downward from the standard calculation. The parties agreed to the deviation because the child spent a significant amount of time with Carrisa. Also, at some point in 2012, Carrisa requested DCS close her case because she feared domestic violence.

The record on appeal is silent until September 2016, when Carrisa applied for TANF. However, DCS did not reopen the Brown case because it determined Carrisa was "good cause level A." Clerk's Papers (CP) at 173, 240. Good cause level A is assigned where DCS determines child support enforcement will result in physical or emotional harm to either the

2

custodian or the child.  WAC 388-422-0020(1)(a).  Carrisa's TANF benefits ended on November 30, 2017.

In May 2018, Carrisa filed a petition to change the parenting plan.  In the petition, Carrisa claimed the September 2012 parenting plan was never followed.  She stated that the child lived with her the majority of the time.  The court ordered Sean and Carrisa to follow the 2012 parenting plan, which listed Sean as the primary residential parent.  The court set a trial date of November 2, 2018 before Commissioner Jean Cotton.

The superior court entered a final order on the parenting plan in April 2019.  Carrisa was named the primary residential parent.  In October 2019, Carrisa obtained a change to the child support order that set Sean's obligation at $553.94 per month.  This change was dated to begin in June 2019 to reflect the change in the primary parent.

On November 20, 2019, DCS reopened Carrisa's case at her request because Sean had not been paying as required by the October 2019 order.  On December 3, 2019, DCS sent Sean a notice to resume child support payments.  This notice listed his current payment of $553.94 per month and arrears of $20,845.64.  The arrearages amount was erroneous.  The notice informed Sean that he could contact DCS to request a conference board where a DCS attorney would review the back support amount, if disputed.

From December 2019 to early January 2020, DCS's records reflected that Sean owed $20,845.64.  As part of a cooperative effort between DCS, the Federal Office of Child Support Enforcement (OCSE), and the Internal Revenue Service (IRS), DCS certified the debt amounts to OCSE.  This is an automated system that is refreshed on the first and third weekend of each month.  The OCSE sends *one notice per year* to parents with debts to explain that any tax refund

they receive could be collected or garnished to cover arrearages. Although OCSE sends the notice, the document lists DCS as the sender so that the parent knows who to contact to resolve any dispute.

Sean's attorney, Gary Morean, contacted the DCS enforcement support officer on December 12, 2019, to discuss the back child support. The enforcement support officer offered Sean the opportunity to inquire into the matter in a conference board, but Morean declined. Sean then filed a "Motion and Declaration to Clarify/Amend Retroactive Child Support Amount/Judgment" on December 19, 2019. CP at 21.

The trial court heard argument on the motion to amend retroactive child support on January 6, 2020.[2] DCS suggested that the court stay enforcement of the arrears so it could investigate the matter. The court ruled that DCS could collect only current monthly support, but no back support until the proper amount of back support could be determined. The court also scheduled a future hearing for January 21. The January 6 order additionally stated, "The Division of Child Support shall also remove or rescind the report to Credit Bureau or other entities until the court can determine the appropriate back support amount in this case for this particular child." CP at 233.

The DCS support enforcement officer responsible for the Brown case received this order on January 9, and adjusted DCS's records that day to reflect that Sean owed no arrearages. This change happened between the first and third weekends of the month, meaning that the OCSE report on Sean's arrearages would not be updated in the federal computer program until the third

---

[2] DCS had filed no pleadings as of this date.

4

weekend of January. The first pleading DCS filed in superior court was on January 17, withdrawing its request for back support owed by Sean during the 2016-17 time period.

After DCS updated its records, but before OCSE's records were updated, Sean received the annual OCSE collection notice from the federal government. This notice, which consisted of two letters, stated that Sean owed $20,654.00.[3] The annual federal OCSE notice letters were addressed to Sean and dated January 14. As explained above, the top of the notice listed DCS— not OCSE or the IRS—as the contact address. The letters were sent before the federal database refreshed, which was not scheduled to occur until approximately January 18-19. DCS and DSHS had no control over this mailing.

At the January 21 hearing, Morean orally requested attorney fees. Morean argued that the collection notice Sean received from OCSE showed that DCS was pursuing the fees against Sean even though a stay was in place and the DCS brief stated that DCS was withdrawing its request. Confusingly, it appears Morean requested that fees should be imposed on DCS based on the initial erroneous calculation, not the OCSE letter. He asked the court "to impose term fees against [DCS], [because] this isn't a law, this isn't a WAC they followed, this is a policy that a bunch of DCS guys got together at lunch and decided we need to fill in the gap." Verbatim Report of Proceedings (VRP) (Jan. 21, 2020) at 23. DCS explained that the initial error in back support calculation was based on an enforcement officer erroneously dating the fees back to an earlier order. The trial court stated, "*I don't necessarily think that they're in bad faith*, but I do

---

[3] The notice from DCS listed Sean's arrearages at $20,854.64. There is nothing in the record on appeal that explains the discrepancy between the amounts reported by DCS and OCSE.

5

recognize that Mr. Brown had to expend a considerable amount of attorney's fees to correct what appears to be a DCS error." VRP (Jan. 21, 2020) at 25 (emphasis added).[4]

Morean stated he had expended $5,655.00 in fees working on the issue. VRP (Jan. 21, 2020) at 27. The trial court stated:

> I do think some award of fees is appropriate. I'm not going to give you everything you're asking for.
> . . . .
> And as far as this issue with the DCS's error in setting that amount, notification—official formal *notification was sent out . . . in error*. It caused Mr. Brown, reasonably so, to retain counsel to address the issue. Fees were expended. I don't think 5,000 something is appropriate, but some amount of fees is appropriate. . . . [E]rrors happen. *I'm not finding that the Department is in bad faith*, but that's not the standard.

VRP (Jan. 21, 2020) at 27-31 (emphasis added).

Because no request for fees had been made prior to the January 21 hearing, DCS requested to brief the issue. The trial court then reserved the issue of fees pending further hearing.

The trial court entered a written order reducing Sean's arrearages to $3,323.64. It also ordered DCS to "correct/undo any notices, records or documents of any kind, which incorrectly indicated the amount of the retroactive child support owed." CP at 89. The DCS support enforcement officer received a copy of this order on January 28, and immediately updated DCS's records to comply.

Sean filed a renewed motion for fees. Sean sought $6,330.00 in attorney fees from DCS. Sean argued that DCS wrongfully pursued the past arrearage amount "contrary to the clear language of the orders of this court." CP at 111. The motion appears to acknowledge that DCS

---

[4] This aligns with the DCS support enforcement officer's declaration.

had no control over the OCSE notice because it stated, "The State actions further allowed the Federal support system to incorrect [*sic*] set and determine an inappropriate and incorrect delinquent past due support amount and notify the respondent of the intent to retain that incorrect amount of past support from his tax refund." CP at 111. Sean cited to no authority authorizing the trial court to award attorney fees. Sean also submitted a list of Morean's attorney fees for work performed beginning December 2019.

DCS filed a brief opposing attorney fees, arguing that the court should deny Sean's motion for fees and require Sean to provide legal authority for his request.

The trial court held a hearing on the attorney fees. At that hearing, Morean argued he should be awarded attorney fees of $6,300 because after the trial court placed a stay on collection on January 6, DCS "did not take out the $20,000 number form the State, the feds swooped in and said, hey, guess what, you owe $20,000."[5] VRP (Feb. 18, 2020) at 39. Morean argued it was "well within the equity power of the Court . . . to impose attorney's fees as a sanction." VRP (Feb. 18, 2020) at 41. In response, DCS argued that the court could authorize attorney fees based only on statute, contract, or recognized ground in equity.

During this exchange, the trial court asked, "How about CR 11 sanctions? Doesn't the Court have authority by rule to impose sanction[s] against a party that's taken a position in bad faith without merit?" VRP (Feb. 18, 2020) at 42. DCS argued that it did not act in bad faith, and that it had no control over the automatic data transfer to the federal system.

After discussing how much in fees Morean expended in the dispute, the trial court stated:

---

[5] It appears from the record on appeal that Sean requested DCS pay all of Morean's fees since December, including fees related to a contempt issue involving Carissa on matters unrelated to back child support.

> The Court is going to grant Mr. Brown's request for attorney's fees based on the Court's equitable powers of CR 11, which I believe Mr. Brown essentially provided indicating that the Department was in bad faith and come up with a number that was clearly contrary to the Court's prior decision, which is I believe accurate based on my review of the file. . . . [T]here's no reasonable excuse addressing the bad faith issue regarding the calculations and the pursuing of [inaudible] child—back child support amount, which there was no basis for in any court order that was entered in this file.
>
> . . . I'm going to grant $5,000. That's the amount.

VRP (Feb. 18, 2020) at 48. The trial court did not mention the automated nature of the DCS—federal reporting system. In a written order entered February 18, the trial court ordered the $5,000 to be paid within 30 days. The order contained no findings of fact and specified no improper pleading or other sanctionable conduct.

DCS filed a motion for reconsideration on February 28. The trial court held a hearing on March 16. There, the trial court stated: "The Court intends to summarily deny the motion for reconsideration, which the Court is authorized to do. There is no briefing or argument necessary." VRP (March 16, 2020) at 10.

DCS appeals. In a three page response brief that cites neither facts nor cases, Sean does little more than call the state a bully and request additional sanctions under RAP 18.9.

ANALYSIS

DCS argues that the trial court erred when it granted Sean attorney fees under CR 11. We agree.

A.  *Legal Principles*

The general rule is that attorney fees will not be awarded unless authorized by contract, statute, or recognized ground of equity. *See Clausen v. Icicle Seafoods, Inc.*, 174 Wn.2d 70, 79 n.2, 272 P.3d 827 (2012). However, CR 11 allows a trial court to impose attorney fees as

sanctions if it finds a party has filed baseless filings. *Biggs v. Vail*, 124 Wn.2d 193, 197, 876 P.2d 448 (1994). We review the imposition of CR 11 sanctions for an abuse of discretion. *Biggs*, 124 Wn.2d at 197. "A trial court abuses its discretion when its order is manifestly unreasonable or based on untenable grounds." *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 339, 858 P.2d 1054 (1993).

B.      *CR 11 Fees Improperly Imposed*

DCS argues the trial court erred when it awarded Sean attorney fees because the fee award was not based on sanctionable conduct. We agree.

1. *No Sanctionable Conduct Under Civil Rule 11*

CR 11 requires attorneys to sign and date every pleading, motion, and memorandum filed with the court, and after a reasonable inquiry certify that each is (1) well grounded in fact; (2) warranted by existing law or a good faith argument for a change to established law; (3) not interposed for any improper purpose, such as to harass or delay; and (4) any denials of factual contentions are warranted on the evidence or reasonably based on belief. CR 11. The court may impose appropriate sanctions on a party that violates CR 11, including reasonable attorney fees. CR 11; *Just Dirt, Inc. v. Knight Excavating, Inc.*, 138 Wn. App 409, 417, 157 P.3d 431 (2007). However, a trial court that imposes CR 11 sanctions must specify the sanctionable conduct in its order. *Just Dirt*, 138 Wn. App. at 417; *Biggs*, 124 Wn.2d at 201. The trial court also "must make a finding that either the claim is not grounded in fact or law and the attorney or party failed to make a reasonable inquiry into the law or facts, or the paper was filed for an improper purpose." *Biggs*, 124 Wn.2d at 201 (emphasis omitted).

"CR 11 is not a fee shifting mechanism, but rather, is a deterrent to *frivolous pleadings*." *Just Dirt*, 138 Wn. App. at 418 (emphasis added). The purpose of the rule is to "deter *baseless* filings and to curb abuses of the judicial system." *Biggs*, 124 Wn.2d at 197 (quoting *Bryant v. Joseph Tree, Inc.*, 119 Wn.2d 210, 219, 829 P.2d 1099 (1992)).

CR 11 concerns pleadings. Here, the trial court made no finding that DCS filed a frivolous pleading or baseless filing in the action before it. Indeed, there is nothing in the record on appeal that shows any evidence of bad faith frivolous pleadings or baseless filings by DCS in court. Thus, there is nothing in any of DCS's filings that violates CR 11. Accordingly, there are no grounds for an award under CR 11 here.

Furthermore, the trial court did not specify any sanctionable conduct in its order, as required. The trial court made no finding, either written or oral, that any pleading or other motion or memorandum filed by DCW was improper under CR 11, that any were unsigned, or that any DCS attorney failed to conduct a reasonable inquiry.

A trial court's oral decisions may be sufficient findings and conclusions to issue sanctions when the trial court specifically incorporates them into the final order. *Johnson v. Jones*, 91 Wn. App. 127, 136, 955 P.2d 826 (1998). However, such an oral ruling should be comprehensive and detailed. *Johnson*, 91 Wn. App. at 136. Any oral award must also explain how the trial court calculated the fee award as required for review. *Just Dirt*, 138 Wn. App. at 415.

The trial court here made no oral findings, and the trial court's oral decision was neither comprehensive nor detailed. Even if it had incorporated its oral ruling into the order, the oral rulings were inadequate and contradictory. At the January 21 hearing, the trial court said twice

10

that DCS's conduct did not amount to bad faith. Then, in the February 18 hearing, without stating that the court was making any findings, the trial court announced that:

> [T]he Department was in bad faith and come up with a number that was clearly contrary to the Court's prior decision, which is I believe accurate based on my review of the file. . . . [T]here's no reasonable excuse addressing the bad faith issue regarding the calculations and the pursuing of [inaudible] child - back child support amount, which there was no basis for in any court order that was entered in this file.

VRP (Feb. 18, 2020) at 48. This explanation is difficult to decipher, but it is clear that the trial court gave no explanation of what conduct—if any—DCS made in bad faith.

### 2. *No Prelitigation Misconduct*

Prelitigation misconduct can serve as the basis for an attorney fee award where necessary for the

> "enforcement of judicial authority, as where misconduct of a party amounting to contempt of court has caused the opposing party to incur counsel fees, or where a person retains possession of property after a judicial determination of the wrongful character of his possession, thus forcing the party wronged to the expense of further proceedings to recover possession or otherwise enforce his rights."

*State ex rel. Macri v. City of Bremerton*, 8 Wn.2d 93, 105, 111 P.2d 612 (1941) (citation omitted) (quoting *Guay v. Bhd. Bldg. Ass'n*, 87 N.H. 216, 177 A. 409, 413 (1935)). An award of prelitigation fees is analogous to a remedial fine for civil contempt. *Rogerson Hiller Corp. v. Port of Port Angeles*, 96 Wn. App. 918, 928, 982 P.2d 131 (1999). Washington courts have never awarded fees for prelitigation misconduct in administrative fora. *Maytown Sand & Gravel, LLC v. Thurston County*, 191 Wn.2d 392, 443, 423 P.3d 223 (2018), *as amended* (Oct. 1, 2018), *abrogated on other grounds by Yim v. City of Seattle*, 194 Wn.2d 682, 451 P.3d 694 (2019); *see also Rogerson Hiller*, 96 Wn. App. at 927-28.

Even assuming that the trial court based its determination of bad faith on the letter Sean received from the OCSE, there is nothing in the record to suggest that DCS sent this letter to Sean seeking collection after the trial court entered the January 6 stay on collection. To the contrary, the record shows that the enforcement officer immediately updated DCS records to reflect the reduction in Sean's arrearages and that the automated federal reporting system is outside of DCS's control. There is simply no showing of bad faith in this instance and does not rise to the level that warrants sanctions.

Because there are no grounds for sanctions or fees here under CR 11, we hold that the trial court erred when it awarded CR 11 sanctions to Sean.

3. *Improper Fee Shifting*

"CR 11 is not a fee shifting mechanism, but rather, is a deterrent to *frivolous pleadings*." *Just Dirt*, 138 Wn. App. at 417 (emphasis added).

The trial court did not specify what sanctionable conduct DCS committed, and the record on appeal shows no such conduct exists. The court appears to have based the award, in part, on the fact that Sean was required to retain counsel to address DCS's erroneous calculation. But the mere fact that a party had to retain counsel to resolve such an error does not support an attorney fee award. Instead, it appears to be improper fee shifting.

C.      *Sanctions Under RAP 18.9*

Sean argues that we should award additional sanctions against DCS under RAP 18.9. Because we reverse the trial court's imposition of sanctions under CR 11, we necessarily do not award any sanctions or fees to Sean under RAP 18.9.

No. 54617-5-II

RAP 18.9 authorizes this court to "award sanctions against a party who uses the Rules of Appellate Procedure for the purposes of delay, files a frivolous appeal, or fails to comply with the Rules of Appellate Procedure." *Schorno v. Kannada*, 167 Wn. App. 895, 904, 276 P.3d 319 (2012). Sean's request for additional sanctions is without merit. Nothing in DCS's appeal suggests it is frivolous, filed for delay, or fails to comply with the Rules of Appellate Procedure. Moreover, Sean cites to no authority and refers to no provision of the rules which DCS violated. Accordingly, we deny Sean's request for sanctions under RAP 18.9.

CONCLUSION

DCS did not file any baseless pleading, or otherwise engage in sanctionable conduct. Consequently, we hold that the trial court abused its discretion when it awarded attorney fees to Sean. We therefore reverse the award of attorney fees and remand to the trial court with instructions to vacate the order.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J

_____
Maxa, J.

_____
Sutton, A.C.J.

13